**Christopher SMITH, et al., Plaintiffs,**

**v.**

**Brian ATWOOD, et al., Defendants.**

Civ. A. No. 93–2320(SS).

United States District Court, District of Columbia.

March 15, 1994.

Richard Anthony Hellman, Washington, DC, for plaintiffs.

Neil H. Koslowe, U.S. Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION
## AND ORDER

SPORKIN, District Judge.

This matter comes before the Court on Defendants' Motion to Dismiss. The motion will be granted.

Plaintiff Christopher H. Smith is a member of the United States House of Representatives. Plaintiffs Tong Wai Zhang and Zhen Hue Guo are Chinese nationals who are currently in federal custody and awaiting deportation. Both Chinese plaintiffs have applied for asylum in the United States. Plaintiffs have sued Brian Atwood, the Administrator of the Agency for International Development ["AID"], the United States Agency for International Development, and the International Development Cooperation Agency. Plaintiffs' claim is that Atwood illegally failed to determine that the United Nations Fund for Population Activities ["UNFPA"] is barred from receiving funding from the United States. AID is charged with providing assistance for family planning and demographic projects abroad. UNFPA provides grants to foreign countries and private agencies engaged in population planning activities abroad.

The complaint seeks judicial review of Defendant Atwood's decision. Plaintiffs maintain Defendant Atwood should have found that UNFPA is ineligible to receive U.S. funding because UNFPA supports family planning programs in China and because China has a coercive family planning policy that mandates abortion for pregnant women and/or sterilization for parents who have exceeded the maximum allowable number of children.

Plaintiffs seek a permanent injunction, enjoining the disbursement of any U.S. funds to UNFPA during the 1994 fiscal year. Plaintiffs also move for a preliminary injunction, *pendente lite*, to block the scheduled disbursement on or after March 1, 1994, of up to $40 million in population planning assistance to UNFPA. As injury from Defendants' actions, Plaintiff Smith alleges that his efficacy as a member of Congress has been impaired and his constitutional authority to authorize appropriations with conditions attached has

been hampered. The Chinese nationals allege as injury the fact that if they are deported to China, it is possible that they will be subjected to "China's brutal coercive population programs." Plaintiffs' Opposition to Defendants' Motion to Dismiss at 11. Plaintiffs claim that debarment of UNFPA funding by the U.S. could cause "the Chinese government to undertake a serious effort to curb at least the most blatantly coercive practices in the program, which would benefit Chinese couples that would otherwise be victimized by those practices." *Id.* at 12–13.

Defendants oppose the motion for a preliminary injunction and have moved to dismiss the complaint for lack of standing and lack of a justiciable controversy.

*Underlying Facts*

Section 104(b) of the Foreign Assistance Act of 1961, as amended, provides in part that the President is authorized to furnish assistance for voluntary population planning. 22 U.S.C. § 2151b(b). The President has been granted the discretion by Congress to furnish family planning assistance "on such terms and conditions as he may determine." 22 U.S.C. 2151b(b). None of this assistance may be used to pay for the performance of abortions or sterilizations as a method of family planning, or to coerce any person to practice abortions or undergo sterilizations. 22 U.S.C. 2151b(f).

In the 1985 amendments to the Foreign Assistance and Related Programs Appropriations Act, the restriction on population funds to use in *voluntary* family planning programs was further strengthened when the Congress gave the President the authority to withhold U.S. funds from any organization which the President determined to be supporting coercive family planning programs:

[n]one of the funds made available in this Bill, nor any unobligated balances from prior appropriations may be made available to any organization or program which, *as determined by the President of the United States*, supports or participates in the management of a program of coercive abortion or involuntary sterilization.

P.L. 99–88, 99 Stat. 293 (1985) (emphasis added). This specific language has been

called the "Kemp–Kasten" Amendment. Kemp–Kasten has been reenacted by Congress every year since 1985.[1]

The President delegated to the Secretary of State the authority to make the Kemp–Kasten determination that an organization is ineligible to receive population planning assistance. The Secretary further delegated this authority to the Administrator of AID. *See* 22 U.S.C. 2381(a) (authorizing the President to exercise foreign assistance functions through such agency or officer of the United States Government as he shall direct).

From 1985 to 1992, prior Administrators of AID had determined, pursuant to Kemp–Kasten, that UNFPA was barred from receiving population planning assistance from the United States. Withholding was based on the Administrators' determination that UNFPA was participating in the management of a program of coercive abortion and involuntary sterilization in the People's Republic of China. *See Population Institute v. McPherson*, 797 F.2d 1062 (D.C.Cir.1966) (finding AID Administrator's decision under Kemp–Kasten to withhold funding from UNFPA was supported by the record and dismissing a challenge to the decision by members of Congress and a recipient organization). In 1993, the Clinton Administration changed the seven year-old policy and decided to resume funding for UNFPA. In September, 1993, the United States made a contribution to UNFPA for fiscal year 1993 of $14.5 million. Defendants' Motion to Dismiss at 6.

In a September 10, 1993 letter to Senator Jesse Helms of the Senate Committee on Foreign Relations, Defendant Atwood illuminated the basis for his determination that UNFPA should be able to receive U.S. funds:

> The United States strongly opposes coercion in family planning programs, and State Department representatives to the UNFPA Governing Council meeting in June expressed our dismay about reported continued abuses in China. In deciding to resume assistance for UNFPA, this Administration did not determine that China's population control program is not coercive, but rather that UNFPA does not support or participate in the management of a program of coercive abortion or involuntary sterilization.

> This Administration does not believe it should attribute to UNFPA human rights violations in a government's population program *unless there is clear evidence that UNFPA knowingly and intentionally provides direct funding or other support for those abuses.* The Kemp–Kasten amendment is an ambiguous provision, and Congress did not indicate an intention to apply this restriction automatically and more broadly to an organization which provides assistance to a country that has a program of coercive abortion or involuntary sterilization.

> . . . .

> During the June Governing Council meeting, the Executive Director of UNFPA likewise condemned coercion in family planning programs. She explained that UNFPA has had a constant dialogue with Chinese officials about reproductive freedom and monitors its project carefully to ensure adherence to universally accepted standards of human rights. Several other country members of the Governing Council repeated their longstanding belief that UNFPA's presence in China is a moderating influence and a catalyst for change there.

> . . . .

> The United States will ensure that UNFPA reviews, during each annual Governing Council meeting, progress made toward improving reproductive freedom in China. In addition, if there are not significant improvements in China's population program, the United States will not support continued UNFPA assistance to China beyond 1995 when the current program ends.

Plaintiff's Motion for Temporary Restraining Order, Ex. A. (Letter of Brian Atwood, pp. 3–4) (September 10, 1993) (emphasis added). Believing this letter to be an explication by Defendant Atwood of the basis of the change

---

1. For fiscal 1994, it appears in the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1994, Pub.L.No. 103–87, 107 Stat. 931, 934 (1993).

in interpretation of Kemp–Kasten, Plaintiffs challenge the legality of the decision.

The gravamen of the complaint is that the Administrator's interpretation of Kemp–Kasten, as related in the letter to Senator Helms, imposes a criminal intent standard before the funds can be withheld. While Plaintiffs do not claim that UNFPA is barred from receiving U.S. funds, Plaintiffs object to Atwood's position that UNFPA would not be barred from receiving funds unless Atwood found UNFPA's "knowing and intentional" participation in coercive abortion and involuntary sterilization activities of the Chinese government. Plaintiffs maintain that this newly created scienter requirement defeats the purpose of Kemp–Kasten, which is to prevent the use of United States tax dollars in coercive birth control, whether that use be knowing, intentional, reckless, or negligent. Plaintiffs assert that under Kemp–Kasten, the Administrator, as a threshold matter, must make an *objective* determination whether China does or does not maintain a coercive family planning program. Then the Administrator must make a determination whether the assistance of UNFPA allows China to more effectively implement such policies.[2]

Defendant opposes the motion for a temporary injunction and moves to dismiss for lack of jurisdiction, asserting that none of the plaintiffs have standing to sue.

*Standing*

■ At a minimum, the Constitution requires the plaintiffs to show they have suffered "some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The injury must be traceable to the challenged action and be "likely to be redressed by a favorable decision." *Id.; Simon Eastern Kentucky Welfare Rights Org.*, 426 U.S.

26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976). The injury must result from an invasion of a legally protected interest which is (1) concrete and particularized and (2) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

Article III of the Constitution mandates the injury and redressability requirements. "Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Academy*, 454 U.S. at 475–76, 102 S.Ct. at 760–61. It is through these requirements that the Constitution constrains the courts, limiting their activities to the resolution of actual cases or controversies and thereby preventing the judicial process from becoming "merely publicly funded forums for the ventilation of public grievances." *Id.* at 473, 102 S.Ct. at 759; *see also United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973) (noting that judicial process should not be converted into "no more than a vehicle for the vindication of the value interests of concerned bystanders."). If none of the plaintiffs in the instant action can satisfy the constitutional requirements of standing, this lawsuit must be dismissed.

*Analysis*

■ Defendants' motion questions the Plaintiffs' standing to maintain this lawsuit. It is clear that the Plaintiffs Zhang and Guo do not meet the standing threshold. While they certainly describe some barbaric actions that might befall them if they return to their homeland, the relationship of such actions to the law in question is entirely too remote to provide them with the requisite standing to challenge the Congressional enactment. The Chinese plaintiffs meet neither the traceability nor the redressability aspects of the constitutionally mandated standing requirement.[3] *See Lujan v. Defenders of Wildlife*,

2. This was the interpretation of Kemp–Kasten that was upheld by the D.C. Circuit in *Population Institute v. McPherson*, 797 F.2d 1062, 1073 (D.C.Cir.1986).

3. It may appear paradoxical that in the *McPherson* case, an organization which would have received UNFPA funds was found to have standing

to challenge a decision by the AID Administrator, while in the instant case, Chinese citizens (who, it must be acknowledged, are the intended beneficiaries of the Kemp–Kasten amendment) do not have standing to challenge a decision to release U.S. monies to UNFPA. *See, Population Institute v. McPherson*, 797 F.2d 1062 (D.C.Cir.1986). But such is the nature of the standing doctrine.

— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

▮ The standing of Congressman Smith is a little different. At oral argument, his counsel made a persuasive argument that Brian Atwood, the Administrator of the Agency for International Development, would impose a standard that would require a criminal intent before he would withhold funds pursuant to the Kemp/Kasten Amendment. Administrator Atwood in his letter to Senator Helms articulated the position that only "clear evidence" of knowing and intentional direct funding or support by UNFPA to a government's population program position would be considered by AID in the Kemp–Kasten determination. It is quite clear that such a standard is in no way contemplated by the Kemp/Kasten Amendment.

At oral argument, the Court requested that defense counsel confer with Administrator Atwood to determine whether the language used in the Helms letter was simply a poor choice of words or whether he actually intended to administer the Act pursuant to a criminal scienter standard.

The Court has been advised by letter from defense counsel that the words were indeed poorly chosen and that the Administrator would under no circumstance impose a criminal intent standard before revoking a grant if the Administrator learned the grantee was violating the Kemp/Kasten Amendment:

I am authorized by AID to advise the Court that, by the quoted phrase, the Administrator meant to clarify that the re-

strictions in the ambiguous language of Kemp–Kasten are not triggered by activities which are unintentional or remote, or which only indirectly or marginally relate to a program of coercive abortion or involuntary sterilization. The Administrator was not suggesting that Kemp–Kasten's restrictions are triggered only by criminal misconduct.

Exhibit 1 (attached).

The letter satisfies the Court that Administrator Atwood in his administration of the law would apply a standard within contemplation of the Act. If it should turn out that Administrator Atwood is applying an incorrect standard then the Congressman may return to Court. As the case now stands, the Court finds the issue is moot. There is clearly no basis to grant an injunction on the state of the record before the Court. Since the case is moot, there is no need to decide the standing of Congressman Smith to maintain the suit. This is particularly so since at oral argument his counsel made clear that Congressman Smith's actions relied principally on the inappropriate language contained in the Atwood letter to Senator Helms. Although Congressman Smith's counsel is not entirely satisfied with the clarification submitted by defense counsel, the Court finds the clarifying letter acceptable and that there is no reason to further litigate this issue.[4]

Accordingly, the case will be dismissed with respect to the individual Chinese defendants because of a lack of standing, and with respect to Congressman Smith, the case will be dismissed because it is moot. An appropriate order accompanies this opinion.

### *ORDER*

Having considered Defendants' Motion to Dismiss, Plaintiffs' opposition thereto, and

---

4. While the Court finds the clarifying letter generally acceptable, it is not entirely satisfied with its wording. The court believes that the Kemp–Kasten Amendment would bar the provision of any funds to an organization that participates to any extent in a program of "coercive abortion or involuntary sterilization." Now is not the time to make such a determination. The Administrator must oversee how the funds entrusted to him are administered.

If it should come to the Administrator's attention that UNFPA is spending the funds given to it in contravention of Kemp–Kasten to any extent, the Administrator must cut off any future funding. If the Administrator does not act appropriately, his actions will be subject to appropriate sanctions. In addition, if that point should ever arise, Congressman Smith may refile this action. It is assumed that the Administrator will discharge his duties responsibly and in good faith.

having heard argument by the parties, it is hereby

**ORDERED** that the claims of Plaintiffs Zhang and Guo be dismissed for lack of jurisdiction; and it is further

**ORDERED** that the claim of Plaintiff Smith be dismissed as moot.

## EXHIBIT 1

### U.S. Department of Justice

Civil Division

*Washington, D.C. 20530*

NHKoslowe:crd

145–194–36

March 11, 1994

*HAND–DELIVERED*

Honorable Stanley Sporkin

United States District Judge

United States Courthouse

3rd Street and Constitution Avenue, N.W.

Washington, D.C. 20001

Re: *Smith v. Atwood (D.D.C., C.A. No. 93–2320 (SS))*

Dear Judge Sporkin:

During oral argument on the pending motions in this case yesterday, plaintiffs' counsel referred to the letter of September 10, 1993, from J. Brian Atwood, Administrator of AID, to Senator Jesse Helms (Exhibit A to Complaint). In that letter, the Administrator explained the government's decision to renew funding for UNFPA. Plaintiffs' counsel specifically referred to the first paragraph on the second page of that letter, in which the Administrator stated that the United States would not apply Kemp–Kasten to disqualify UNFPA unless there is "clear evidence that UNFPA knowingly and intentionally provides direct funding or other support for [a program of coercive abortion or involuntary sterilization]." The Court asked whether, by this phrase, the Administrator meant that Kemp–Kasten's restrictions are triggered only by activities which constitute *criminal* misconduct.

I am authorized by AID to advise the Court that, by the quoted phrase, the Administrator meant to clarify that the restrictions in the ambiguous language of Kemp–Kasten are not triggered by activities which are unintentional or remote, or which only indirectly or marginally relate to a program of coercive abortion or involuntary sterilization. The Administrator was not suggesting that Kemp–Kasten's restrictions are triggered only by criminal misconduct.

Respectfully submitted,
/s/ Neil H. Koslowe
NEIL H. KOSLOWE
Special Litigation Counsel

cc: Craig L. Parshall, Esq. (by facsimile transmission)